IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

JACQUELINE M. THOMAS,          *

    Plaintiff,                *

vs.                               *      CASE NO. 3:18-cv-103 (CDL)

CLARKE COUNTY SCHOOL DISTRICT,   *

    Defendant.               *

## O R D E R

Jacqueline Thomas alleges that her former employer, Clarke County School District ("the School District"), discriminated against her based on her age, race, and sex in violation of federal law. The School District filed a Motion for Summary Judgment with an accompanying Statement of Material Facts pursuant to Local Rule 56. Thomas did not bother to respond to either. For the following reasons, the School District's Motion for Summary Judgment (ECF. No. 16) is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary

judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

Because Thomas did not respond to the School District's statement of material facts, the School District's fact statements are deemed admitted pursuant to Local Rule 56. Nevertheless, the Court must still review the School District's citations to the record to determine whether a genuine fact dispute exists. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009). Viewed in the light most favorable to Thomas, the materials submitted by the School District in support of its summary judgment motion establish the following.

In August 2016, the School District hired Thomas to be an adaptive special education teacher at Cedar Shoals High School based on the recommendation of DeAnne Varitek, the principal of that school. Thomas's position required her to teach students with significant cognitive disabilities in a separate classroom from other students. Thomas's position also required her to provide instruction in accordance with the students' Individualized Education Programs, which allow teachers to adapt,

2

modify, and differentiate educational standards based on each student.  Thomas, a black woman who was fifty-eight years old in 2016, taught with a group of four white special education teachers.  One of these teachers, Jason Bales, was also the team leader for the special education teachers.  The chair of the special education department was another white male named James Blose.  During the 2016-2017 school year, the School District's teacher evaluation system called for school administrators to observe first-year teachers six times.  At Cedar Shoals High School, the principal, Varitek, and vice principals Dr. Victoria Hunter and Dr. Aaron Carter completed these observations.

Varitek first observed Thomas in November 2016. During this observation, Varitek documented several performance deficiencies. These deficiencies included (1) teaching from an incomplete lesson plan; (2) using worksheets from a teacher workbook despite instruction to base the lesson on each individualized student; (3) Thomas's inability to identify individual learning needs; (4) a lack of "activating strategies" to help make the content more relevant for students; (5) the use of "very traditional methods, despite individual learning needs and 1:1 technology that students possess[ed]"; and (6) a failure to allow students to "summarize, rephrase, or share personal experiences related to the content and skill."  Varitek Aff. ¶ 20, ECF No. 16-2.

As a result of these observed deficiencies, Varitek placed Thomas on a professional development plan designed to help Thomas improve her lesson plans and teaching skills. Part of this plan involved regular appointments with Blose, the chair of the special education department. Thomas also had to create specific lesson plans and post them in a shared online folder each Sunday so that Blose could review them and provide feedback.

Vice Principal Hunter conducted Thomas's second observation. She noted that Thomas had only posted three of the required ten lesson plans and that Thomas was showing a movie that seemed to be disconnected from pertinent educational standards.

Varitek conducted the third observation and noted that Thomas was showing the same movie from the previously observed lesson and that the movie was not related to Thomas's lesson plan on the conjugation of verbs.

Hunter conducted the fourth observation in December 2016. Her observations revealed continuing problems. She specifically documented issues related to lesson plans and communication with parents.

Vice Principal Carter conducted Thomas's fifth observation and noted a discrepancy between the lesson plan and the actual instruction. During this observation, Thomas discussed the net worth of celebrities with students during a study skills class.

Hunter completed Thomas's sixth observation in March 2017; she questioned Thomas's use of a video clip about rape. She also expressed concerns about the students' ability to comprehend the lesson and the reading level of the text that Thomas chose to use for the lesson.

In January 2017, between Thomas's fourth and fifth observations, Varitek informed Thomas that she was not going to recommend a renewal of Thomas's teaching contract for the 2017-2018 school year. Then, in February 2017, Thomas complained to Hunter about a racially hostile environment. Thomas Dep. 65:11-24, ECF No. 20. Thomas also informed Hunter that during a meeting with Bales, Thomas's assigned mentor, and Blose, the chair of the special education department, Bales had engaged in sexual harassment by "staring at [her] breasts." Thomas Dep. 75:2-8. Thomas also reported the alleged sexual harassment to Varitek when she informed Varitek that Blose would also stare at Thomas's breasts and say "Oooooh" when she got up from her seat, which Thomas interpreted as a comment about her buttocks. Thomas Dep. 103:14-104:15. Thomas taught for the remainder of the 2016-2017 school year. The School District did not renew her teaching contract, and she brought this action in July 2018. The School District hired a twenty-six-year-old white male as a special education teacher at Cedar Shoals High School following Thomas's departure.

DISCUSSION

Thomas asserts four claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and one claim under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"). For the following reasons, the Court grants the School District's motion for summary judgment on all of Thomas's claims.

I. **The Title VII Claims**

Thomas brings four claims under Title VII. First, she claims that the School District discriminated against her based on her race by placing her on a professional development plan. Second, she alleges that the School District fired her because of her race. Third, she asserts that she faced a hostile work environment based on her race and sex. Fourth, she alleges that the School District retaliated against her because she reported sexual harassment and racial discrimination. The Court considers each claim below.

A. The Disparate Treatment Claims

For Thomas to survive summary judgment on her disparate treatment claims, there must be enough evidence "to permit a reasonable jury to rule in her favor." *Lewis v. City of Union City, Ga*, 918 F.3d 1213, 1217 (11th Cir. 2019) (en banc). To make this determination when there is no direct evidence of discrimination, the Court evaluates the record using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). *Lewis*,

918 F.3d at 1217 (discussing *McDonnell Douglas*). Under this framework, the plaintiff has the initial burden of establishing a prima facie case, which creates a rebuttable presumption of discriminatory intent. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). The defendant may rebut that presumption by articulating a legitimate non-discriminatory reason for its action. *McDonnell Douglas*, 411 U.S. at 802; *Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) (per curiam). If the defendant meets this burden, the plaintiff must show that the proffered reason is pretext for discrimination. *Burdine*, 450 U.S. at 256.

*1. The Disparate Discipline Claim*

To establish a prima facie case of discrimination in the disparate discipline context, a plaintiff must show (1) that she is a member of a protected class; (2) that she is qualified for her job; (3) she was subjected to an adverse employment action; and (4) that she was treated less favorably than similarly situated employees outside her protected class. *Lewis*, 918 F.3d at 1221. Assuming that Thomas met the first three elements of the prima facie case here, her claims fail because the record does not indicate that that she was treated differently than similarly situated employees outside her protected class.

Thomas claims that the School District treated her differently than other similarly situated employees based on her race because Varitek placed her on a professional development plan.

Under this plan, Thomas had to meet with Varitek, the special education department chair, and the special education team leader more often than other teachers. The professional development plan also called for closer scrutiny of Thomas's lesson plans than other teachers' lesson plans.

To be "similarly situated," a comparator must be "similarly situated in all material respects" to the plaintiff. *Lewis*, 918 F.3d at 1218. This means that the comparator "engaged in the same basic conduct (or misconduct) as the plaintiff," was "subject to the same employment policy, guideline, or rule as the plaintiff," was "under the jurisdiction of the same supervisor as the plaintiff," and shared "the plaintiff's employment or disciplinary history." *Id.* at 1227-28.

The present record does not support the conclusion that any of the white special education teachers were "similarly situated in all material respects" to Thomas. *Lewis*, 918 F.3d at 1218. There is no evidence that Varitek observed the white special education teachers and found deficiencies in their performances; nor is there evidence that Varitek subjected any of the white special education teachers to a professional development plan that was somehow less stringent than Thomas's plan. Consequently, the present record does not support a prima facie case of race

8

discrimination based on the professional development plan, and the Court grants summary judgment on this claim.[1]

The Court also notes that even if Thomas could establish a prima facie case, the School District articulated a legitimate nondiscriminatory reason for subjecting Thomas to the professional development plan. *Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1375 (11th Cir. 1996) (explaining that an incompetent performance is a legitimate nondiscriminatory reason to discharge an employee). Incompetent teaching and the failure to comply with educational standards are legitimate nondiscriminatory reasons to subject an employee to a professional development plan and meetings related to that plan. *Id.* With no evidence in the record that the School District's reasons for its actions were pretextual, the School District is entitled to summary judgment even if Plaintiff could establish a prima facie case. *Burdine*, 450 U.S. at 256.

  2.  *The Termination Claim*

Thomas also claims that the School District terminated her because of her race. To establish a prima facie case of race discrimination based on a termination, a plaintiff must establish (1) that she is a member of a protected class; (2) that she was qualified for her job; (3) that she was subjected to an adverse

---

[1] Based on the Court's review of Thomas's Complaint, Thomas does not appear to assert a sex discrimination claim based on the professional development plan. Even if she did, her sex discrimination claim would fail because she did not point to evidence that she was treated differently than a similarly situated male employee.

9

employment action; and (4) that she was replaced by someone outside her protected class. *Hawkins v. Ceco Corp.*, 883 F.2d 977, 982 (11th Cir. 1989).

The Court assumes that Thomas can establish a prima facie case. Thus, the School District must articulate a legitimate non-discriminatory reason for terminating Thomas. The School District has done so. Varitek placed Thomas on a professional development plan after observing her teach in November 2016 because Thomas exhibited several deficiencies. As a result of this plan, Thomas had to attend meetings with various school leaders and submit specific lesson plans. During the next three observations, administrators noted deficiencies related to lesson plans and Thomas's teaching in general. Because Thomas did not improve, Varitek informed her that she was not going to recommend the renewal of Thomas's contract. "Incompetence or failure to meet reasonable standards of efficiency" are "legitimate, nondiscriminatory reasons" to fire an employee. *Mayfield*, 101 F.3d at 1375. Poor teaching and the failure to comply with educational standards are clearly legitimate nondiscriminatory reasons not to renew a teacher's employment contract. No evidence exists in the present record to suggest that the School District's proffered reasons for her termination were pretext for

discrimination.  Thus, the School District is entitled to summary judgment on Thomas's termination claim.[2]

B. The Hostile Work Environment Claim

In addition to her disparate treatment claims, Thomas asserts that the School District subjected her to a hostile work environment based on her race and sex.  To establish a hostile work environment claim under Title VII, an employee must show (1) that she belongs to a protected group; (2) that she has been subject to unwelcome harassment; (3) that the harassment was based on her race or sex; (4) that the harassment was "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment"; and (5) there is a basis for holding the employer liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc). The record contains no specific allegations or evidence regarding Thomas's general allegation of a race-based hostile work environment. Therefore, the School District is entitled to summary judgment on Thomas's race-based hostile work environment claim. *See, e.g.*, *McCann v. Tillman*, 526 F.3d 1370, 1378 (11th Cir. 2008) (explaining that a race-based hostile work environment claim addresses acts like intimidation, ridicule, or insults based on race).

---

[2] Thomas does not appear to assert that she was terminated because of her sex. If she had, this claim would fail for the same reasons as her race discrimination claim.

Thomas does allege a couple of specific instances of purported sexual harassment. She claims that Bales and Blose frequently stared at her breasts and Blose on at least one occasion made the noise, "Oooooh," in reference to her buttocks when she got up from her seat. Thomas Dep. 75:2-8; 103:14-104:15.

These allegations are simply not enough to support a finding that the harassment was sufficiently severe or pervasive to alter the terms and conditions of Thomas's employment and create a discriminatorily abusive working environment under Eleventh Circuit precedent. Courts evaluate four factors to make this determination: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance." *Mendoza*, 195 F.3d at 1246. In *Mendoza*, the Eleventh Circuit considered whether the employee-plaintiff satisfied any of these factors when she asserted that her supervisor "constantly" followed her around and stared at her, twice looked at her groin and made a sniffing motion, once rubbed his hip up against her while touching her shoulder and smiling, and once said "I'm getting fired up" to the plaintiff during a meeting. *Id.* at 1242-43. The Eleventh Circuit determined that the plaintiff failed to show that the conduct was physically threatening or humiliating, that it unreasonably interfered with her job performance, or that it rose

the level of severity required for a hostile work environment claim. *Id.* at 1248-49. While the conduct may have been frequent, it did not meet the other three objective component factors. *Id.*

Comparing the factual allegations of *Mendoza* to Thomas's allegations, the Court finds that Thomas alleges boorish behavior that is less severe than the behavior in *Mendoza.* Although inappropriate, the alleged behavior, like the alleged behavior in *Mendoza*, was not physically threatening, physically humiliating, or severe. *Id.* Further, the record contains no evidence that the behavior unreasonably interfered with Thomas's job performance. *Cf. Hulsey v. Pride Restaurants, LLC*, 367 F.3d 1238, 1248 (11th Cir. 2004) (holding that a male assistant manager's conduct did interfere with a female employee's work performance when he followed her into the bathroom, repeatedly tried to touch her breasts, placed his hands down her pants, and enlisted others' assistance to hold her down while he tried to grope her). Because no evidence exists in the present record from which a reasonable jury could conclude that Bales and Blose's conduct was objectively severe or pervasive enough to alter the terms and conditions of Thomas's employment, the School District is entitled to summary judgment on Thomas's hostile work environment claim.

C. The Retaliation Claim

Thomas's final claim under Title VII is a claim for retaliation. As in the disparate treatment context, Thomas must

first establish a prima facie case of retaliation. She may do so by showing (1) that she engaged in statutorily protected activity; (2) that she suffered an adverse employment action; and (3) that the adverse employment action is causally related to the protected activity. *Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1454 (11th Cir. 1998). If a plaintiff establishes a prima facie case, then the defendant may articulate a legitimate non-retaliatory reason for the challenged action. *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016). To defeat summary judgment, the plaintiff must show a genuine fact dispute on whether the defendant's proffered reason is merely pretext for retaliation. *Id.*

Thomas claims that she suffered two types of retaliation. First, she claims that once she complained about sexual harassment and racial discrimination, "she was summoned to the Principal's office routinely" and had to meet with Varitek or Blose and Bales on a regular basis. Compl. 5, ECF. No. 1. Second, she claims that Varitek decided not to renew her employment contract after she complained about the sexual harassment and racial discrimination. *Id.*

Being summoned to frequent meetings with Varitek, Bales, and Blose does not amount to an adverse employment action. As the Supreme Court has explained, "a plaintiff must show that a reasonable employee would have found the challenged action

14

materially adverse, 'which in this context means it well might have "dissuaded a reasonable worker from making or supporting a charge of discrimination."'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)). It is difficult to understand how being summoned to one's superior's office based upon concerns about one's job performance would dissuade a reasonable person from reporting discriminatory conduct. But even if the meetings *would* amount to a materially adverse action and there *was* a causal connection, the School District proffered a legitimate non-retaliatory reason: the frequent meetings were related to Thomas's initial deficiencies, her professional development plan, and continuous performance deficiencies. Varitek Aff. ¶¶ 20-37. And the record contains no evidence that these reasons for the meetings were pretextual. Accordingly, the Court grants the School District's motion for summary judgment on this retaliation claim.

Thomas's retaliation claim arising from Varitek's decision not to renew Thomas's employment contract is even weaker. The record demonstrates that Varitek made this decision and informed Thomas of her decision in January 2017. Varitek Aff. ¶ 33. The record also shows that Thomas did not report the alleged sexual harassment or racial discrimination until February 2017, *after* the decision not to renew her contract had been made. Because she did not complain of alleged discrimination or harassment until *after*

Varitek informed her that Varitek was not going to recommend a contract renewal, no reasonable jury could conclude that her contract non-renewal was causally related to any protected activity. *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Consequently, she cannot establish a prima facie case with regard to her contract non-renewal retaliation claim and the School District is entitled to summary judgment on this claim as well.

## II. The ADEA Claim

Under the ADEA, it is unlawful for an employer to terminate or otherwise discriminate against an employee because of the employee's age. 29 U.S.C. § 623(a)(1). "To assert an action under the ADEA, an employee must establish that his age was the 'but-for' cause of the adverse employment action." *Liebman v. Metro. Life Ins. Co.*, 808 F.3d 1294, 1298 (11th Cir. 2015) (per curiam). The *McDonnell Douglas* framework governs age-related discrimination claims when they are based on circumstantial evidence. *See Sims v. MVM, Inc.* 704 F.3d 1327, 1332-33 (11th Cir. 2013) (explaining that it is proper for courts to analyze ADEA claims based on circumstantial evidence under the *McDonnell Douglas* framework even though the standard for such claims is but-for causation under *Gross v. FBL Financial Services, Inc.* 557 U.S. 167, 176 (2009)).[3]

---

[3] The Court notes that under *Quigg v. Thomas County School District*, 814 F.3d 1227, 1237-38 (11th Cir. 2016), *McDonnell Douglas* is not an appropriate framework for analyzing mixed-motive claims. Here, Thomas has not brought any mixed-motive claims, and so *McDonnell Douglas* remains appropriate for the analysis in this case.

16

To establish a prima facie case in this context, a plaintiff may show (1) she was between the age of forty and seventy; (2) she experienced an adverse employment action; (3) a substantially younger person filled her previous position; and (4) she was qualified to do the job from which she was discharged. *Liebman*, 800 F.3d at 1298. As previously explained, even assuming that Thomas established a prima facie case, the School District articulated legitimate nondiscriminatory reasons for not renewing Thomas's teaching contract, and there has been no evidence that these reasons were pretextual. Thomas's age discrimination claim, like all of her other claims, fails as a matter of law.

CONCLUSION

For the foregoing reasons, the School District's Motion for Summary Judgment (ECF. No. 16) is granted.

IT IS SO ORDERED, this 22nd day of August, 2019.

S/Clay D. Land
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA